Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-131[1]

| PALATINE HILL ASSOCIATION CORPORATION<br><br>Apelante<br><br>Vs.<br><br>ADAM BALDUCCI Y OTROS<br><br>Apelado | KLAN202300582 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala de Aguada<br><br>Caso Núm. AU2022CV00085<br><br>Sobre: Cobro de Dinero-Ordinario |
|---|---|---|

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Aldebol Mora y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 16 de febrero de 2024.

Comparece ante nos, Palatine Hill Asociation Corportation, (en adelante, "Palatine Hill" o "Apelante"), quien presenta recurso de Apelación en el que solicita nuestra intervención en una *Sentencia Parcial* emitida por el Tribunal de Primera Instancia Sala Superior de Aguada (en adelante "TPI") el 24 de abril de 2023, notificada el 19 de mayo de 2023. En dicho dictamen el foro de instancia declaró "Ha Lugar" la *Moción Solicitando Sentencia Sumaria Parcial* presentada por Adam Balducci, Jane Balducci y la sociedad legal de gananciales compuesta por ambos (en adelante y en conjunto "Familia Balducci" o "Apelados") y "No Ha Lugar" la *Moción Solicitando Sentencia Sumaria Parcial a Favor de la Parte Demandante*, radicada por los Apelantes.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración,

---

[1] Mediante la Orden Administrativa OATA-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución de la Jueza Monsita Rivera Marchand.

confirmamos el dictamen mediante los fundamentos que expondremos a continuación.

I.

El 18 de febrero de 2022, Palantine Hill presentó *Demanda* en contra de la Familia Balducci en la que alegó violación a las condiciones restrictivas constituidas en la propiedad. Según alegan estas condiciones tienen como propósito limitar el uso de aparcamientos, mantenimiento, y pernocte de vehículos de motor personales, comerciales o recreacionales en los usos públicos, áreas comunes y garajes residenciales del complejo. Señaló que, Palantine Hill es un complejo estrictamente residencial en predios de terrenos segregados y sujetos a condiciones restrictivas constituidas mediante escritura pública núm. 109 otorgada el 27 de junio de 2007, presentada en el Registro de Propiedad. Además, arguyen que el 18 de noviembre de 2021, se enmendó el reglamento corporativo, para aclarar algunas de las condiciones restrictivas ya existentes en la escritura anteriormente mencionada.

Ante esto, sostienen que los Apelados han utilizado las áreas no permitidas como estacionamiento, violando así las condiciones restrictivas establecidas. Es ante esta situación que, el 26 de septiembre de 2021, Palatine Hill advirtió de forma verbal y escrita a la Familia Balducci sobre el incumplimiento con las condiciones restrictivas, sin embargo, estos hicieron caso omiso a ello. Es por ello que, Palatine cursó una carta dirigida a los Apelados a través de su abogado, notificándole sobre la intención de hacer valer su reglamento e imponiéndoles una multa de $250.00 diarios, mientras no removieran el excedente de vehículos de su propiedad. Según exponen, los Apelados adeudan la cantidad de $21,250.00 en multas acumuladas. Por consiguiente, Palantine Hill recurrió al foro primario y solicitó que se le ordenara a la Familia Balducci remover los vehículos de motor y que se abstuvieran de realizar actos que

contravinieran con lo estipulado en su reglamento corporativo. Además, solicitaron el pago de las multas impuestas y $5,000.00 adicionales por concepto de honorarios de abogados.

En atención a ello, el 11 de agosto de 2022, los Apelados presentaron Contestación a la Demanda Enmendada y Reconvención. En síntesis, alegaron que la propiedad no estaba sujeta a las condiciones restrictivas o al "By Laws" ampliado el 18 de noviembre de 2021. [2] En cuanto a la reconvención, solicitaron la desestimación de la demanda y la concesión de $90,000.00 en concepto de daños sufridos.

Luego de varios trámites procesales impertinentes para la controversia que nos ocupa, el 2 de noviembre de 2022, la Familia Balducci presentó *Moción Solicitando Sentencia Sumaria Parcial* en la cual argumentó que el régimen de condiciones restrictivas en controversia no le era oponible, ya que no había sido inscrito en el Registro de la Propiedad sobre la finca de los Apelados. Por otro lado, en cuanto al "By Laws" sostuvieron que no se ha violado ninguna de sus condiciones, por estas haber sido constituidas contrarias a Derecho, debido a que, según alegan, está prohibido enmendar condiciones restrictivas mediante reglamento para afectar una parte demandada.

En respuesta, el 7 de febrero de 2023, Palatine presentó *Moción Solicitando Sentencia Sumaria Parcial a favor de la Parte Demandante.* En síntesis, solicitó se declarara que la propiedad se veía afectada por las condiciones restrictivas en controversia. Expuso que la finca matriz de donde se segregó el inmueble adquirido por los Apelados se encontraba gravado con condiciones restrictivas de uso y edificación, las cuales fueron constituidas con

---

[2] La demanda fue enmendada el 23 de febrero de 2022, a los únicos efectos de alegar que la deuda aludida estaba vencida, líquida y exigible. Véase, Apéndice del recurso, págs. 53-57.

anterioridad a la adquisición del inmueble por la Familia Balducci. Sostuvieron que estos aceptaron las restricciones desde la adquisición del inmueble y se beneficiaron de las ventajas provistas por las mencionadas condiciones, así como la ejecución del reglamento de la corporación. Por otro lado, arguyó la falta de parte indispensable, debido a que el vendedor de la propiedad John Ray Carraway pactó ser el responsable de cualquier gravamen que no surgiera del Registro de la Propiedad, conforme a la escritura de Compraventa otorgada. Finalmente argumentó que los Apelados no podían ser considerados como terceros registrales.

En atención a lo anterior, el 17 de marzo de 2023, la Familia Balducci presentó *Réplica a Moción Solicitando Sentencia Sumaria Parcial Presentada por la Parte Demandante* en la cual reiteraron los argumentos presentados en su previa moción.

Evaluados los escritos presentados, el 24 de abril de 2023, notificada el 19 de mayo de 2023, el TPI emitió *Sentencia Parcial* en la cual declaró "Ha Lugar" la moción de Sentencia Sumaria presentada por los Apelados y "No Ha Lugar" la solicitud de Sentencia Sumaria presentada por los Apelantes, dejando pendiente de adjudicación la Reconvención.

Inconformes con la determinación, el 31 de mayo de 2023, la Familia Balducci presentó *Moción Solicitando Reconsideración de Sentencia Parcial a los Efectos de que se Impongan Honorarios de Abogados*, solicitándole al TPI que dispusiera en cuanto a los honorarios de abogados solicitados.

Por su parte, el 1 de junio de 2023, los Apelantes presentaron *Moción Solicitando Reconsideración de Sentencia y Determinaciones de Hechos Adicionales* en la cual aclararon el tracto procesal del Registro de la Propiedad y alegaron que las condiciones restrictivas son de aplicación a la Familia Balducci, por lo que solicitaron la reconsideración de la sentencia.

Atendidos los escritos presentados, el 7 de junio de 2023, notificada el 9 de junio de 2023, el TPI emitió *Resolución* declarando "No Ha Lugar" ambas mociones de reconsideración.

Insatisfechos con la determinación realizada por el TPI, el 5 de julio de 2023, Palantine Hill presentó recurso de Apelación en la cual señaló la comisión de los siguientes errores:

**A)      Erró el T.P.I al aplicar la norma de derecho registral hipotecaria de "primero en tiempo mejor en derecho", sin considerar los hechos específicos del presente caso donde la escritura sobre Condiciones Restrictivas se encontraba presentada en el Registro de la Propiedad para ser inscrita gravando los 22 predios de terrenos a ser segregados, obviándose la inscripción de condiciones en el predio número 3 por actas aclaratorias, subsanatorias y cartas limitando la inscripción de derechos <u>sin la comparecencia de partes interesadas.</u>**

**Del tracto registral para la inscripción de las condiciones restrictivas surge escritura aclaratoria fechada el <u>6 de julio de 2022</u> ante el Notario Domingo F. Acevedo Bayrón se presentaron documentos complementarios y una "carta solicitando se limite el asiento solo en cuanto a la agrupación", firmada por el Lcdo. Domingo F. Acevedo Bayrón el <u>17 de junio de 2022</u>.**

**B) Erró el T.P.I. al no considerar el concepto de buena fe como elemento esencial a los fines de ser considerados tercero registral los adquirentes de inmuebles conforme a lo definido por la jurisprudencia aplicable, al igual de los tratadistas a tales efectos.**

**C)      Erró el T.P.I. al no aplicar el derecho sustantivo en cuanto a la Ley de Control de Acceso y el Reglamento número 20 de planificación, ley y reglamento aplicable para los años cuando se otorgó la escritura sobre Condiciones Restrictivas.**

**D)      Erró el T.P.I. al resolver como acto <u>nulo y contrario a las condiciones restrictivas plasmadas</u> en la escritura tales efectos, el especificar mediante "By Laws", de la Asociación de Residentes, la verdadera intención con relación a la cantidad de vehículos a ser estacionados al costado de las estructuras dedicadas a vivienda, y el definir que la condición restrictiva incluye vehículos abandonados o sin uso, no podían continuar en las parcelas, así como tampoco a la orilla de la carretera, etc.**

> **E) Erró el T.P.I. al resolver que la parte vendedora del solar 3, primer adquirente, Sr. John Ray Carraway no es parte indispensable en el presente pleito, ya que surge de la escritura #256 sobre Compraventa del 18 de diciembre de 2020 ante la Notario Ignari M. Acevedo Rosario, que tal vendedor sería responsable de cualquier gravamen que surgiere del Registro de la Propiedad, el cual no se encontrase en el estudio de título confeccionado. Tampoco se advirtió sobre gravámenes que no surgen del Registro de la Propiedad.**

Examinado el recurso en su totalidad y habiendo comparecido las partes, procedemos a exponer el derecho aplicable en aras de resolver.

II.

### A. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal que tiene como propósito la solución, justa, rápida y económica de los litigios civiles que no contengan controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo.[3] La Regla 36.1 de Procedimiento Civil[4] establece que las partes podrán presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.[5] La sentencia sumaria es una excepción al juicio mediante testimonios vivos frente al juzgador de los hechos.[6] La parte que solicita la sentencia sumaria tiene la responsabilidad de demostrar de manera clara que el promovido no puede prevalecer mediante ningún supuesto de hechos y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración.[7]

---

[3] *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 979 (2022).
[4] 32 LPRA Ap. V, R. 36.1.
[5] *Id.*
[6] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).
[7] *Id.*, pág. 473.

Por su parte, el Tribunal tiene discreción para conceder o no la sentencia sumaria, ya que el mal uso de esta puede despojar a un litigante de su día en corte, lo cual coartaría su debido proceso de ley.[8] Es por lo anterior, que no es aconsejable que se utilice el mecanismo de sentencia sumaria cuando hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia que deban ser evaluados por el juzgador.[9] No obstante, el Tribunal puede utilizar el mecanismo de sentencia sumaria, aun cuando hay elementos subjetivos, si la evidencia que será considerada en la solicitud surge que no existe controversia en cuanto a los hechos materiales.[10] Ahora bien, antes de utilizar el mecanismo de sentencia sumaria, el Tribunal debe evaluar lo siguiente:

> (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos.[11]

En síntesis, el Tribunal de Primera Instancia no podrá dictar sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no ha sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre hecho material y esencial, o (4) como cuestión de derecho no proceda."[12]

Ahora bien, si la otra parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por

---

[8] *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990).
[9] *Segarra Rivera v. International Shipping Agency, Inc., supra*, pág. 980.
[10] *SLG Zapata-Rivera v. J.F. Montalvo, supra*, págs. 442-443.
[11] *Management Administration Services, Corp v. ELA*, 152 DPR 599, 611 (2000).
[12] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 335 (2021).

el promovente.[13] No obstante, el solo hecho de no presentar evidencia que controvierta la presentada por el promovente, no implica necesariamente que procede la sentencia sumaria.[14] Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria, sino que tienen el deber de considerar todos los documentos en autos, incluso aquella que no haya formado parte de la solicitud, sin dirimir cuestiones de credibilidad.[15]

En cuanto al estándar de revisión aplicable al Tribunal de Apelaciones al momento de revisar la determinación del foro primario de conceder o denegar la sentencia sumaria, el foro intermedio apelativa solo puede:

> (1) considerar los documentos que se presentaron ante el foro primario —cual implica que, en apelación los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el foro primario, ni esbozar nuevas teorías—, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta.[16]

Por utilizar los mismos criterios de evaluación, los foros apelativos se encuentran en la misma posición que el tribunal de instancia.[17] Ahora bien, el Tribunal Supremo estableció que el estándar a seguir para revisar la denegatoria o concesión de una moción de sentencia sumaria es el siguiente:

> (1) que el Tribunal de Apelaciones se encuentre en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria, y que esta revisión sea *de novo*;
>
> (2) que el Tribunal de Apelaciones revise que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en las Reglas de Procedimiento Civil;
>
> (3) que el Tribunal de Apelaciones revise si en realidad existen hechos materiales en controversia y si existen debe exponer concretamente cuáles hechos materiales

---

[13] *PFZ Props, Inc v Gen, Acc Ins. Co.* 136 DPR 881, 912-913 (1994).
[14] *Id.*, pág. 913.
[15] *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).
[16] *Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 981.
[17] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 116 (2015).

encontró que están en controversia y cuáles están incontrovertidos, y

(4) si los hechos materiales realmente son incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho en la controversia.[18]

### B. Condiciones restrictivas

Las condiciones restrictivas son adoptadas jurisprudencialmente por nuestro ordenamiento jurídico. Estas son definidas como "cláusulas restrictivas a beneficio de los presentes y futuros adquirentes que imponen cargas o gravámenes especiales, como parte de un plan general de mejoras para el desarrollo de una urbanización residencial en esa finca."[19] Para que las condiciones restrictivas sean válidas es necesario que cumplan con una serie de requisitos a saber: "(1) las limitaciones deberán ser razonables; (2) deben establecerse como parte de un plan general de mejoras; **(3) deben constar de forma específica en el título de la propiedad, y (4) deben ser inscritas en el Registro de la Propiedad."**[20] (Énfasis nuestro). De este modo, las condiciones restrictivas tienen como propósito preservar la belleza, la comodidad y la seguridad del reparto residencial según éste es concebido por sus arquitectos y constructores.[21] Es importante destacar que las condiciones restrictivas son indivisibles por lo que cuando una finca gravada con servidumbre en equidad es segregada, a su vez queda gravada la nueva finca.[22]

A tenor con lo antes mencionado, las condiciones restrictivas constituyen cargas o gravámenes reales, por lo que crean derechos reales inscribibles en el Registro de la Propiedad, y una vez son inscritas, constituyen derechos reales oponibles *erga omnes*.[23] A

[18] *Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 982.
[19] *Asoc. Vec. Urb. Huyke v. Bco Santander*, 157 DPR 521, 534-535 (2002).
[20] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, 208 DPR 310, 327 (2021).
[21] *Park Tower, S.E. v. Registradora*, 194 DPR 244, 252 (2015).
[22] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, *supra*, pág. 326.
[23] *Asoc. Vec. Urb. Huyke v. Bco Santander, supra*, pág. 535.

estos efectos, se configura una relación de servidumbres recíprocas, pues cada lote o solar es predio dominante, a la vez que sirviente, con relación a los demás lotes o solares de la urbanización.[24]

Cónsono con lo anterior, las condiciones restrictivas se consideran un contrato entre las partes. Esto debido a que las partes interesadas pueden convenir gravar su propiedad para delimitar el uso, por su parte, quien adquiere una propiedad ya gravada con condiciones restrictivas acepta someterse a ellas.[25]

Ahora bien, el Tribunal Supremo ha expresado que las condiciones restrictivas pueden modificarse o extinguirse de varias maneras, a saber:

(1) por acuerdo de los interesado, ya sea mediante rescisión total o parcial o mediante la constitución de nuevas restricciones que alteren las anteriores; (2) por el transcurso del tiempo o por realizarse la condición, si las restricciones se constituyeron a plazo o condicionalmente, (3) por confusión, si se reúne en una misma persona la propiedad de todos los predios sirvientes y dominantes; (4) por renuncia o abandono de los propietarios que se benefician de la servidumbre, mediante conducta que demuestre la intención concluyente de renunciar o abandonarla; (5) por expropiación forzosa del predio sirviente, si las condiciones restrictivas son incompatibles con el uso público del inmueble expropiado, y (6) cuando cambios radicales del vecindario no solo hacen la restricción irrazonable y opresiva para el dueño del predio sirviente, sino también destruyen el valor que la restricción tenía para el dueño del predio dominante, por lo cual resulta imposible alcanzar los fines que perseguía la servidumbre.[26]

## C. *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico.*

La Ley Núm. 210 de 2015, mejor conocida como, Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, fue creada con el propósito de establecer el Registro Inmobiliario digital, el cual tiene por objetivo la inscripción por la vía electrónica de los derechos, actos y contratos relativos a los bienes

---

[24] *Id.*

[25] *Dorado del Mar Estates Homeowners Association, Inc. v. Weber*, 203 DPR 31, 43 (2019).

[26] *Id,* pág. 44.

inmuebles. Además, contiene un sistema de publicidad de títulos que incluyen las adquisiciones, modificaciones y extinciones del dominio y de los demás derechos reales que recaen sobre dichos bienes. El Registro provee para la inscripción o anotación de otros derechos sobre o relacionados a bienes inmuebles. Por su parte, los asientos del Registro, en cuanto se refieren a los derechos inscritos, están bajo la salvaguarda de los tribunales de justicia y producen todos los efectos legales que ellos correspondan, mientras dichos tribunales no hagan declaración en contrario.[27]

En nuestro ordenamiento la inscripción registral es voluntaria y como regla general, declarativa en la mayoría de los casos, debido a que los derechos reales sobre inmuebles se constituyen, modifican, transmiten o extinguen, con eficacia jurídica, fuera del registro.[28] Por tanto, el registro no da ni quita derechos, ya que su función no es declarar la existencia o inexistencia de un derecho.[29] No obstante, hay algunos casos en específicos los cuales fungen como excepción a la regla general, puestos a que dependen de la inscripción en el registro para poder nacer, a estos los llamamos constitutivos.

Ahora bien, en su artículo 19 la Ley Núm. 210-2015 establece que los títulos inscritos **surtirán efecto a terceros desde la fecha de su inscripción**. Siendo ello así, la preferencia o rango dependerá de la fecha, hora y número de asiento de presentación en el Registro de los títulos respectivos.[30] A tenor con lo anterior, los tratadistas han expresado que:

> "[e]n el sistema puertorriqueño es irrelevante la fecha de constitución extrarregistral del derecho en la determinación del momento en que se adquiere la prioridad registral. Tratándose de una fecha clandestina que no goza de publicidad, aun en los casos en que haya participado un notario en la celebración del

---

[27] Art. 1 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico de 2015, Ley Núm. 210-2015 (30 LPRA Sec. 6001).
[28] Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 3ra ed. rev. San Juan, 2012, pág. 42.
[29] *U.S.I. Properties, Inc. v. Registrador*, 124 DPR 448, 467 (1989).
[30] Art. 19 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico de 2015, Ley Núm. 210-2015 (30 LPRA Sec. 6034).

negocio jurídico, no podrá oponerse a terceros cuando surjan controversias sobre el orden en que deban figurar los derechos en el Registro o sobre los efectos de determinadas inscripciones o anotaciones. [31]

Según el derecho antes expuesto, el principio registral de prioridad o rango está atado al momento en el que se presenta la escritura, es por virtud de este principio que lo actos registrales que primero ingresen al Registro de la propiedad gozarán de una preferencia sobre cualquier otro acto presentado con posterioridad, aunque el último acto presentado fuese de fecha anterior. Ante esto, el elemento temporal es esencial, pues el rango otorgado a los derechos será concedido a partir de una determinada cronología de eventos.[32] Según se ha expresado, "[e]l concepto de rango se utiliza para designar la posición en el orden jerárquico de derechos que recaen sobre un mismo inmueble."[33]Ahora bien, cuando surja el acontecimiento de que dos escrituras hayan sido presentadas el mismo día, es necesario que atendamos la hora y el número de sus presentaciones en el registro para determinar la preferencia entre ellos. [34]

### D. Tercero Registral

La figura del tercero registral se encuentra regulada por el Artículo 35 de la Ley Núm. 210-2015 el cual dispone lo siguiente:

> El asiento de inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, ni altera las relaciones jurídicas de quienes intervengan como partes en dichos actos o contratos.
>
> **No obstante, el derecho real de un tercero estará protegido por la fe pública registral y será mantenido en su adquisición** cuando cumpla con los siguientes requisitos:
>
> 1. El derecho es adquirido válidamente y con arreglo a la ley en un negocio intervivos, de buena fe y a título oneroso de persona que en el Registro aparece con facultad para transmitirlo, y que ha sido inscrito.

---

[31] Rivera Rivera, Op. Cit., pág. 204.
[32] *Gasolinas P.R. v. Registrador*, 155 DPR 652, 675 (2001).
[33] Rivera Rivera, Op. Cit., pág. 210.
[34] Rivera Rivera, Op. Cit., pág. 204.

2. La adquisición se efectúa basado en un Registro inexacto por causas que no resultan clara y expresamente del propio Registro o por existir sobre la finca acciones o títulos de dominio o de otros derechos reales que no están debidamente inscritos.

Ha de entenderse por Registro los asientos relativos a una finca o derecho, no extinguidos según lo dispuesto en esta Ley, que se refieran a cargas y gravámenes o a derechos que no sean del que transfiere o grava, además del asiento que publica el derecho del transmitente.

**La buena fe del tercero se presume siempre que haya actuado con una mínima dosis de diligencia y mientras no se pruebe que al adquirir conocía la falta de exactitud del Registro.**

El adquirente a título gratuito sólo gozará de la protección registral que corresponde a sus causantes o transferentes.

Los derechos meramente mencionados o la indebida constancia de obligaciones no afectarán a tercero. (Énfasis nuestro).

Cónsono con lo anterior, la Ley Núm. 210-2015 impone varios requisitos a aquellos que reclamen la protección del Registro de la Propiedad, estos son: (1) tercero civil, (2) buena fe, (3) adquirente a título oneroso, (4) en un negocio inter vivos válido, (5) adquiera un derecho real inmobiliarios inscrito, (6) en función de un registro inexacto, (7) que no concurran las excepciones a la aplicación de la fe pública registral, (8) que haya inscrito su adquisición. [35]

A la luz de lo antes expuesto, la buena fe registral se presume en el desconocimiento por parte del tercero adquirente de la inexactitud del Registro. No obstante, siempre debe estar presente el concepto de diligencia.[36] Es por esto que, para demostrar la mala fe de un adquirente basta con probar que conoció la posesión de hecho de la finca, a título de dueño, por persona distinta de su transmitente, o que tuvo medios racionales y motivos suficientes para conocerla.[37] A tenor con el derecho antes citado, la buena fe es

---

[35] *Banco Santander v. Rosario Cirino*, 126 DPR 591, 603-604 (1990).
[36]*Id.*, pág. 605.
[37] *Id.,* pág. 606.

una presunción *iuris tantum,* por lo que quien pretende impugnarla tiene el peso de la prueba. [38]

### E. Parte Indispensable

La Regla 16.1 de Procedimiento Civil[39] regula el mecanismo procesal de la acumulación de parte indispensable. La referida regla dispone, en lo pertinente, que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". Además, el Tribunal Supremo ha definido una parte indispensable como:

> Aquella que tiene tal interés en la cuestión envuelta en la controversia que no puede dictarse un decreto final entre las partes en la acción sin lesionar y afectar radicalmente su interés, o sin permitir que la controversia quede en tal estado que su determinación final haya de ser inconsistente con la equidad y una conciencia limpia.[40]

La Regla 16.1[41] pretende: (1) proteger las personas ausentes de los posibles efectos perjudiciales que pueda ocasionarles la resolución del caso; (2) emitir una determinación completa; y (3) evitar la multiplicidad de pleitos.[42] La inclusión de una parte indispensable trata de un ejercicio de consideración pragmática de los intereses implicados.[43] A tal efecto, el tribunal deberá examinar los intereses envueltos y distinguir entre los diversos géneros de casos.[44] Ahora bien, el "interés común" que da lugar a la acumulación no es cualquier interés en el pleito sino uno de tal orden que impida la confección de un derecho adecuado sin afectarle o destruirle radicalmente sus derechos.[45] Adicionalmente, dicho interés debe ser real e inmediato, y no cimentado en

---

[38] *Id.*

[39] 32 LPRA Ap. V, R. 16.1.

[40] *FCPR v. ELA et al.,* 211 DPR 521 (2023); *Cirino González v. Adm. Corrección et al.,* 190 DPR 14, 46 (2014).

[41] 32 LPRA Ap. V, R. 16.1.

[42] *RPR & BJJ, Ex parte,* 207 DPR 389, 407 (2021).

[43] *Cirino González v. Adm. Corrección et al., supra; Hernández Agosto v. López Nieves,* 114 DPR 601, 606 (1983).

[44] *Deliz et als. v. Igartúa et als.,* 158 DPR 403, 434 (2003).

[45] *Pérez Rosa v. Morales Rosado,* 172 DPR 216, 223 (2007).

especulaciones ni en eventos futuros.[46] A su vez, el tribunal deberá auscultar si podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente.[47]

### F. Ley de Control de Acceso[48]

La Ley de Control de Acceso de 1987 tiene como propósito principal el proveerle a la ciudadanía un mecanismo adicional para combatir la criminalidad, velando así por la seguridad y tranquilidad de las comunidades.[49] La mencionada pieza legislativa estableció un procedimiento para que las comunidades puedan obtener un permiso municipal para crear un sistema de control de acceso en las calles que se encuentran dentro de su área residencial.[50] Por su parte, la mencionada ley "faculta a los miembros de una comunidad a organizarse en un Consejo, Asociación o Junta de Residentes para que sean estos quienes *inter alia*: (1)soliciten la autorización correspondiente al municipio, (2) impongan y cobren la cuota necesaria para cubrir los costos y gastos de instalación, operación y mantenimiento del control de acceso, y (3) de ser necesario reclamen el pago por vía judicial."[51]

Ante ello, la sección 16 de la mencionada Ley establece lo siguiente:

> Los propietarios que no autorizaron expresamente el establecimiento del sistema de control de acceso no estarán obligados al pago de cuotas para el establecimiento, operación, mantenimiento o remoción de dicho sistema excepto en aquellos casos en que se comprometan a dichos pagos mediante contrato escrito. Cuando así se comprometan, estos propietarios estarán sujetos a las obligaciones y disposiciones de la Sección 10 de esta ley. [Nota: Actual Sección 11, renumerada por el Art. 2 de la Ley 179-2016] Todo propietario o residente tendrá acceso al área sujeta al control de acceso en igualdad de condiciones y todo propietario podrá participar con voz y voto en las

---

[46] *Id.*

[47] *FCPR v. ELA et al., supra; Pérez Rosa v. Morales Rosado, supra.*

[48] La Ley Núm. 21 de 20 de mayo de 1987 fue derogado en el 2020 por la Ley Núm. 107-2020, mejor conocida como el Código Municipal de Puerto Rico.

[49] Ley Núm. 21 de 20 de mayo de 1987, mejor conocida como Ley de Control de Acceso de 1987, 23 LPRA sec. 64

[50] *Coop. Oriental v. Conejo de Titulares*, 195 DPR 330, 342 (2016).

[51] *Dorado del Mar Estates Homeowners Association, Inc. v. Weber, supra.*

asambleas generales que celebre el Consejo, Junta o Asociación de Residentes, independientemente de que sea o no miembro de dicho organismo.[52]

De otra forma, en la sección 9 de la Ley Núm. 21-1985 señala que:

El permiso y autorización a que se refiere la Sección 1 de esta ley podrá inscribirse en el Registro de la Propiedad de Puerto Rico como un gravamen real sobre la finca cumpliendo los siguientes requisitos:

(a) Cuando la solicitud de permiso y autorización fue hecha por un urbanizador, desarrollador o constructor que haya cumplido con lo establecido en la Sección 4 de esta ley deberá el titular y propietario registral hacer la solicitud de inscripción en escritura pública y someterá certificación de la Junta de Planificación de Puerto Rico y del municipio en donde ubique el desarrollo o lotificación en la que se haga constar que se cumplieron los requisitos expuestos en la Sección 4 de esta ley y las condiciones o limitaciones impuestas para la concesión del permiso o autorización. **Si la finca sobre la que ha de inscribirse el gravamen estuviese segregada o su segregación fuere solicitada se inscribirá el gravamen sobre cada una de las nuevas fincas segregadas o a segregarse. Si no estuviese segregada la finca y luego se segrega entonces al momento de cada segregación el Registrador de la Propiedad hará constar en cada inscripción de las nuevas fincas la existencia del gravamen.[53]**
[…] (Énfasis nuestro)

### III.

En el presente caso las partes han traído ante nuestra consideración la alegada comisión de cinco errores cometidos por el Tribunal de Primera Instancia. Como primer error, señalan que el foro primario no debió aplicar la normativa de "primero en tiempo, mejor en derecho", ya que no consideró los hechos específicos del caso, donde la escritura de condiciones restrictivas se encontraba gravando los 22 predios de terrenos a ser segregados, obviando la inscripción por actas aclaratorias y cartas, limitando la inscripción de derechos sin la comparecencia de partes interesadas. A lo que no le asiste la razón, nos explicamos.

---

[52] 23 LPRA sec. 64g
[53] 23 LPRA sec. 64d

Conforme a lo discutido anteriormente, nuestro ordenamiento jurídico establece que la inscripción registral es voluntaria y declarativa en la mayoría de los casos, es decir que no es obligatoria la inscripción en el registro para que nazca un derecho. Es por esto que, el registro no da ni quita derechos. No obstante, existen ciertas excepciones a la regla general, entre ellas se encuentra la hipoteca, el derecho de superficie y las condiciones restrictivas. En estos casos particulares es necesario que se realice la inscripción en el Registro para que el derecho nazca y sea oponible a terceros.

Por su parte, las condiciones restrictivas son derechos limitativos del uso de la propiedad. Este derecho es una de las excepciones al principio general del derecho registral que establece que la inscripción es voluntaria y declarativa. Tal cual previamente esbozado, las condiciones restrictivas tienen que cumplir con ciertos requisitos para que sean válidas, estos son: "(1) las limitaciones deberán ser razonables; (2) deben establecerse como parte de un plan general de mejoras; **(3) deben constar de forma específica en el título de la propiedad, y (4) deben ser inscritas en el Registro de la Propiedad.**"[54]. Por lo tanto, si las condiciones restrictivas no cumplen con uno de los requisitos antes mencionados, estas no se convierten en derechos reales *erga omnes*. Es necesario que consten inscritas en el Registro de la Propiedad para que afecte a los originales y posteriores adquirientes de la propiedad.

Ahora bien, en el derecho registral opera el principio de prioridad o rango. Este principio establece que una escritura que es presentada primero goza de una preferencia sobre las presentadas posteriormente. Esto nada tiene que ver con la fecha del otorgamiento de la escritura, sino con el momento de la presentación. Inclusive, si más de una escritura es presentada el

---

[54] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, 208 DPR 310, 327 (2021).

mismo día, se determina la prioridad en base a la hora de la presentación y el asiento registral otorgado.

En el ejercicio de estudiar la controversia que tenemos ante nos, es necesario que pasemos a evaluar el tracto registral de la propiedad objeto de este pleito. Inicialmente, en noviembre de 1999 el señor René Valle Ramos y el señor Melvyn Milford otorgaron la escritura núm. 231 sobre *Segregación, Compraventa con Precio Alzado y Agrupación.* En ese mismo acto las fincas segregadas fueron vendidas al señor Erenberg Watskin, quien agrupó las fincas adquiridas con la finca 5,449, formando así la finca núm. 10,577. El 30 de enero de 2003, el señor Melvyn Milford otorgó la escritura núm. 22 sobre *Segregación y Compraventa* a favor de John Carraway. Dicha segregación fue autorizada por la Administración de Reglamentos y Permisos (ARPE), mediante resolución del 15 de enero de 2003. Como consecuencia se segregó el solar #3. Es importante destacar que la finca matriz de la cual fue segregada el solar núm. 3 se encontraba libre de gravámenes y cargas al momento en el que se efectuó la segregación.

Posteriormente, el 18 de mayo de 2004, la corporación de Bryce Brothers Development Corporation, representada por Gary Thomas Hellings, otorgó la escritura núm. 157 sobre *Protective Convenats.* En dichas escrituras se hicieron constar varias de las condiciones que posteriormente fueron impuestas en la escritura núm. 109 otorgada el 27 de junio de 2007 sobre las condiciones restrictivas que nos ocupan en este caso. Dicha escritura constituyó el proyecto residencial Palatine Hill, que consiste en 22 lotes de terrenos sobre los cuales impusieron condiciones restrictivas, entre ellas, las prohibiciones en cuanto al estacionamiento de los vehículos de motor.

Por su parte, 18 de diciembre de 2020, los Apelados adquirieron de John Carraway el solar núm. 3, mediante escritura

de compraventa y constitución de hogar seguro. Al momento del otorgamiento, la mencionada propiedad solo constaba gravada por una hipoteca, más nada reflejaba el registro de que existieran condiciones restrictivas que afectaran la parcela.

A la luz de lo antes expuesto, entendemos que la propiedad objeto de este pleito no se encuentra afectada por las condiciones restrictivas establecidas en las escrituras núm. 157 y 109, nos explicamos. La segregación que formó la mencionada parcela se otorgó el 30 de enero de 2003, un año y cuatro meses antes de que se otorgara la escritura núm. 157, la cual se constituyó el 18 de mayo de 2004.  Por lo que, al momento de dicha segregación no se encontraba gravada la finca matriz, por lo que tampoco lo estaba el nuevo solar. Para que una finca segregada quede gravada con condiciones restrictivas es necesario que se haya gravado la finca matriz antes de que se efectúe la segregación. Siendo ello así, el solar #3 era independiente del resto de los lotes, por lo que, para poder gravarlo, era necesario que se contara con el consentimiento de los dueños y que constaran inscritas las condiciones restrictivas en el Registro de la Propiedad para que surtan efecto.  Enfatizamos que de la prueba presentada surge que, el 18 de octubre de 2022, el Registro de la Propiedad emitió certificación en la cual establece que la propiedad de los Apelados no se encuentra gravada con condiciones restrictivas. **Ante esta realidad es forzoso concluir que la propiedad de los Apelados no está afectada por las condiciones restrictivas que alega el Apelante.**

Por otro lado, como segundo señalamiento de error, el Apelante alega que el TPI debió considerar el concepto de buena fe como un elemento esencial del tercero registral.

Según previamente detallado, en nuestro ordenamiento jurídico se ha establecido que el principio de buena fe se presume, por lo tanto, le corresponde a quien alega la mala fe probarla. Ahora

bien, en cuanto a la figura del tercero registral la buena fe es uno de los requisitos indispensables para que se dé la figura, que además va acompañado del deber de diligencia. Ahora bien, quien alega la mala fe debe demostrar que el alegado tercero registral conocía la posesión o que no ejerció la diligencia suficiente para conocerlo.

En el caso ante nos, los Apelantes alegan que el TPI no tomó en consideración el principio de buena fe para hacer la determinación de tercero registral. Sin embargo, del expediente no consta que estos hayan demostrado la mala fe de la Familia Balducci aun cuando era a ellos a quienes les correspondía el peso de la prueba. Siendo ello así, entendemos que este segundo error tampoco se cometió. Era el deber de Palatine Hill demostrar ante el Foro Primario que los Apelados obraron de mala fe y así rebatir la presunción que los protege.

Por otra parte, los Apelantes alegaron que el TPI debió aplicar el derecho sustantivo correspondiente a la Ley de Control de Acceso y el Reglamento Núm. 20 aplicable para los años en que se otorgó la escritura. No obstante, no le asiste la razón.

Lo cierto es que, Palatine Hill no levantó este argumento en la Demanda, ni en la Demanda Enmendada, más bien lo traen por primera vez en la reconsideración presentada ante el TPI. Posteriormente, trajo el planteamiento mediante este recurso. Por su parte, el TPI resolvió que la Ley Control de Acceso, Ley Núm. 21-1987, derogada por el Código Municipal de 2020, Ley Núm.107-2020 no era aplicable a este caso. A lo que entendemos le asiste la razón, debido a que la controversia inicial de este caso gira en torno a la aplicabilidad de las condiciones restrictivas constituidas mediante escritura pública. La Ley de Control de Acceso lo que busca es regular otros aspectos que no necesariamente están atados a las condiciones restrictivas y las cuales no se encuentran en

controversia en el presente caso. Ante ello, entendemos que dichas leyes no son de aplicación a la presente controversia.

Como cuarto error, Palatine Hill planteó que el TPI no debió decretar como nulas las enmiendas realizadas al "By Laws" por el hecho de querer especificar las condiciones restrictivas. Sin embargo, entendemos que el TPI no declaró la nulidad, tal como plasmado y, por tanto, dicho error no fue cometido.

Cónsono con el derecho anteriormente esbozado, lo cierto es que las condiciones restrictivas solo pueden ser enmendadas de maneras muy específicas, entiéndase por acuerdo de los interesados, por el transcurso del tiempo, por confusión de derecho, por renuncia o abandono de los propietarios, por expropiación forzosa o mediante cambios radicales en el vecindario.

Por su parte, los Apelantes alegan que el "By Laws" no enmienda las condiciones restrictivas, sino que las aclara. A lo que no le asiste la razón, veamos.

El 27 de junio de 2007, los Apelantes otorgaron escritura núm. 109 sobre condiciones restrictivas, la cual establece lo siguiente:

> (G) All vehicles must be parked within the boundaries of the owner´s land and may not be parked on the shoulder of the roads.

> (H) Abandoned or unused vehicles may not remain in the individual parcels or on the public road, or shoulder of those roads.

> (I) No overtly commercial activity shall be permitted on the segregated lot, including the breeding of animals for commercial purposes, storing of vehicles (auto body work), and heavy equipment for commercial use.

Ante ello, el 18 de noviembre de 2021, Palatine Hill incorporó al Reglamento Corporativo las siguientes enmiendas:

> 6.03.07. All Vehicles must be parked within the boundaries of the owner´s land and may not be parked on the shoulder of the roads or on any common property. Special events are exempted from this restriction. No trailers, campers, boats, recreational

vehicles, or commercial vehicles of any kind shall be parked on, or adjoining the property, where visible from street, or from a neighbor´s yard, with the exception of delivery, services or construction vehicles while in the process of preforming their services. Except as required during construction, no vehicle shall be parked on any part of the Property, except on paved driveways, and in garages. While within Palatine Hill, vehicles shall be driven safely at speeds that do not exceed 20 MPH, and without unreasonable noise including but limited to tires screeching, excessive honking, engine revving, or unreasonably loudspeakers.

6.03.08. Abandoned or unused vehicles may not remain on individual parcels or on the public road, or shoulders of those roads. Vehicles are permitted to be parked on undeveloped lots overnight unless approved by the Board.

6.03.09. No overtly commercial activity shall be permitted on the segregated lot, including the breeding of animals for commercial purposes, storing of vehicles (auto body work) and heavy equipment for commercial use.

De una fácil lectura se puede interpretar que las enmiendas realizadas al Reglamento Corporativo son más prohibitivas que las condiciones restrictivas establecidas mediante la escritura núm. 109. Ante ello, lo que buscan dichas enmiendas es ampliar las restricciones ya establecidas, lo cual no es posible hacerlo mediante enmiendas al Reglamento Corporativo. Como discutimos anteriormente, las enmiendas a las condiciones restrictivas solo se pueden hacer en circunstancias muy particulares, las cuales no contemplan las enmiendas a los Reglamentos. Por lo que, entendemos estas enmiendas no son suficientes para establecer una condición restrictiva, ya que su verdadero propósito no es el de especificar, sino el de modificar las condiciones restrictivas, lo cual no es correcto en derecho.

Como último señalamiento de error, Palatine Hill entiende que el TPI debió traer al Sr. John Ray Carraway como parte indispensable en el presente pleito. Esto, debido a que surge de la escritura núm. 256 sobre Compraventa, que el vendedor sería responsable de cualquier gravamen que surgiere del Registro de la

Propiedad, el cual no se encontrase en el estudio del título realizado para la celebración del negocio jurídico.

En el pleito ante nos, los apelados adquirieron la propiedad del Sr. John Ray Carraway mediante escritura de compraventa y constitución de hogar seguro. En dicha escritura, el señor Ray Carraway se comprometió a responder por cualquier gravamen que surgiere del Registro de la Propiedad que no constara en el estudio de título realizado para compraventa. Es ante esto que Palatine Hill alega que este debió traerse como parte indispensable en el pleito. No obstante, del Registro no ha surgido ningún gravamen. Somos de la opinión que las condiciones restrictivas no afectan el solar #3, esto debido a que las mismas fueron otorgadas y registradas posterior a la segregación y la compraventa realizada. Es por esto que, coincidimos con el foro primario al resolver que no era necesaria la participación del señor Ray Carraway. Ya que es parte indispensable la persona sin la cual se haría imposible adjudicar la controversia, lo cual no es el escenario en el caso ante nos.

IV

Por los fundamentos antes expuestos, los cuales hacemos formar parte integral del presente dictamen, confirmamos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones